Luz Marina
**CARDOZA–FONSECA, Petitioner,**

v.

**U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Francisca Rosa
**ARGUELLO–SALGUERA,
Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Nos. 83–7777, 84–7593.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted in No. 83–7777
June 10, 1985.

Argued and Submitted in No. 84–7593
June 13, 1985.

Decided Aug. 12, 1985.

As Amended Aug. 23, 1985.

Bill Ong Hing, Dana Marks Kenner, Simmons & Ungar, Michael A. Mullery, San Francisco, Cal., for petitioner.

Marshall Tamor Golding, Linda B. Adams, Washington, D.C., for respondent.

Before SKOPIL, REINHARDT and HALL, Circuit Judges.

REINHARDT, Circuit Judge:

In both these cases the Board of Immigration Appeals applied an incorrect legal standard when it determined that the petitioners failed to establish their eligibility for asylum under section 208(a) of the Refugee Act of 1980, 8 U.S.C. § 1158(a) (1982). Rather than applying the "well-founded fear" standard, which governs asylum determinations, the Board applied the "clear probability" standard, which governs prohibitions against deportation under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h). Because the Board failed to apply the correct legal standard in evaluating the petitioners' claims, we reverse the Board's orders denying asylum and remand for reconsideration. In addition, the Board failed clearly to articulate the basis for its refusal to grant Arguello-Salguera relief under section 243(h). We reverse that determination as well.

I. FACTS

A. *Cardoza-Fonseca*

Petitioner Luz Marina Cardoza-Fonseca is a citizen of Nicaragua who entered this country as a non-immigrant visitor on June 25, 1979. She remained beyond her authorized stay and the INS initiated deportation proceedings. At her deportation hearing on December 14, 1981, Cardoza-Fonseca conceded that she was otherwise deportable and applied for asylum under section 208(a) of the Refugee Act of 1980, 8 U.S.C. § 1158(a) (1982), and for a prohibition against deportation under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h) (1982).[1] The immigration

judge applied only a "clear probability of persecution" standard and determined that Cardoza-Fonseca was not entitled to relief from deportation. The BIA affirmed, stating that no matter what burden of proof Cardoza-Fonseca faced, whether "'clear probability,' 'good reason' or 'realistic likelihood,'" all of which the Board thought to be identical, she failed to show that she "*would* suffer persecution" (emphasis added). The Board also reasoned that her claim failed because she had not introduced any objective evidence to demonstrate that she "*will* be subject to persecution" (emphasis added). Cardoza-Fonseca appeals only from the denial of her claim for relief under section 208(a).

B. *Arguello-Salguera*

Petitioner Francisca Rosa Arguello-Salguera is a Nicaraguan citizen who entered the United States without inspection on March 15, 1980. At her first deportation hearing on March 27, 1980, she was granted permission to apply for asylum and a prohibition against deportation. At her second deportation hearing on September 10, 1981, she conceded deportability. After a third hearing on October 1, 1982, the immigration judge determined that Arguello-Salguera was a credible witness who presented believable testimony and that she had demonstrated both a clear probability and a well-founded fear of persecution. Accordingly, he concluded that the Attorney General was prohibited from deporting her and he granted her request for asylum. The BIA reversed, applying only the clear probability test and concluding that Arguello-Salguera had "failed to show that she *would* be persecuted" if she returned to Nicaragua (emphasis added). Arguello-Salguera appeals from the denial of her claims for relief under both section 208(a) and section 243(h).[2]

---

1. Requests for asylum under § 208(a), when made after the initiation of deportation proceedings, are also considered as requests for a prohibition against deportation under § 243(h). *See* 8 C.F.R. § 208.3(b) (1984). The benefits granted under the two forms of relief differ somewhat. In particular, an alien who is granted

asylum has an automatic right after one year to apply for adjustment of status to permanent resident alien. *See* 8 C.F.R. § 209.2 (1984).

2. Arguello-Salguera also appeals from the Board's summary denial of her motion to dismiss the INS's appeal of the immigration judge's

## II. THE ASYLUM CLAIMS

### A. *The Legal Standard*

■ Section 208(a) of the Refugee Act gives the Attorney General discretionary authority to grant asylum to any alien who qualifies as a refugee under section 101(a)(42)(A) of that Act. Refugees are those persons outside their native country who cannot return because of "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1982). Although the Attorney General has *discretion* to grant asylum to refugees, the determination of refugee status depends on *factual findings. INS v. Stevic,* —— U.S. ——, 104 S.Ct. 2489, 2497 n. 18, 81 L.Ed.2d 321 (1984); *Espinoza-Martinez v. INS,* 754 F.2d 1536, 1539 (9th Cir.1985); *Bolanos-Hernandez v. INS,* 767 F.2d 1277 (9th Cir. 1984); *Carvajal-Munoz v. INS,* 743 F.2d 562, 567 (7th Cir.1984).

■ The plain terms of section 208(a) require applicants for asylum to demonstrate a "well-founded fear" of persecution. In both of the cases before us the government contends that the "well-founded fear" standard is equivalent to the "clear probability of persecution" standard. This has consistently been the Board's position. *See, e.g., Matter of Acosta,* Interim Dec. No. 2986, slip op. at 25 (BIA March 1, 1985); *Matter of Salim,* 18 I & N Dec. 311, 314 (BIA 1982); *Matter of Lam,* 18 I & N Dec. 15 (BIA 1981); *Matter of Dunar,* 14 I & N Dec. 310, 319–20 (BIA 1973). The "clear probability" standard that the Board finds appropriate for the disposition of asylum cases is in fact applicable to claims for prohibition against deportation under section 243(h), *see Stevic,* 104 S.Ct. at 2501; *Espinoza-Martinez,* 754 F.2d at 1539; *Bolanos-Hernandez,* 767 F.2d at 1281–82; *Car-*

*vajal-Munoz,* 743 F.2d at 568, and not to section 208(a) asylum claims.

Prior to the Supreme Court's decision in *Stevic,* there was considerable confusion over whether the "clear probability" standard differed from the "well-founded fear" standard. Many circuit courts had simply assumed that the criteria for eligibility for a grant of asylum under section 208(a) were identical to those for a prohibition of deportation under section 243(h). *See Bolanos-Hernandez,* 767 F.2d at 1282 n. 10 (listing cases and explaining that some courts applied "clear probability" standard to all claims, while others applied "well-founded fear" standard to all claims). However, in *Stevic* the Court, while not deciding the question, clearly alerted the circuit courts and the Board to the distinct possibility that there is a significant difference between the two tests. The Court expressly assumed, for purposes of the case before it, that the "well-founded fear" standard applicable in asylum cases is "more generous" than the "clear probability of persecution" standard. 104 S.Ct. at 2498.

Following *Stevic,* we, along with the Sixth and Seventh Circuits, unequivocally held that the "well-founded fear" standard is, in fact, "more generous" than the "clear probability" standard. *See Argueta v. INS,* 759 F.2d 1395, 1396–97 (9th Cir.1985); *Bolanos-Hernandez,* 767 F.2d at 1283; *accord Youkhanna v. INS,* 749 F.2d 360, 362 (6th Cir.1984); *Carvajal-Munoz,* 743 F.2d at 574–75. We noted that a recognition of the difference between the standards comports with the structure of the Immigration Act. We said that there is a valid reason for applying a stricter standard where an alien claims he or she is entitled to a mandatory prohibition against

decision on the grounds that the appeal was dilatory, inadequate, and frivolous. She also appeals the Board's denial of her request for voluntary departure. We affirm the Board's denial of the motion to dismiss the INS's appeal. Unlike the notice of appeal in *Matter of Holguin,* 13 I & N 423, 425 (BIA 1969), on which petitioner relies, the INS's notice of appeal in this case

gave sufficient notice of the basis for the appeal to preclude us from determining that the Board erred in denying the motion. Because of the decision we reach regarding Arguello-Salguera's § 208(a) and § 243(h) claims, we need not consider whether the Board abused its discretion, *see* 8 U.S.C. § 1254(e) (1982), in denying voluntary departure.

deportation than where that person is asking only that he or she be found eligible for consideration for a grant of asylum, a grant that ultimately will be made or denied by the Attorney General in the exercise of his discretion. *Bolanos-Hernandez*, 767 F.2d at 1283; *accord Carvajal-Munoz*, 743 F.2d at 575.

In *Bolanos-Hernandez* we discussed the meaning of the "clear probability" test. We said, " '[t]he question under [the section 243(h)] standard is whether it is more likely than not that the alien would be subject to persecution.' " 767 F.2d at 1281 (quoting *Stevic*, 104 S.Ct. at 2498). We concluded that general evidence of widespread conditions of violence in a country is not in itself sufficient to establish a clear probability of persecution, 767 F.2d at 1284 (citing *Zepeda-Melendez v. INS*, 741 F.2d 285, 290 (9th Cir.1984)), and that there must be some evidence that (1) the applicant or those similarly situated are at greater risk than the general population, *see* 767 F.2d at 1284, and (2) that the threat to the applicant is a serious one, *id.* at 1285.[3]

It is apparent from the very words of the statute that the burden under the asylum section (section 208(a)) is not identical to the prohibition-against-deportation (section 243(h)) burden that we have just described. In order to qualify for relief under section 243(h), an alien must introduce evidence demonstrating that his or her "life or freedom" would be threatened, 8 U.S.C. § 1253(h) (1982). It is this statutory test that the courts have held is met by demonstrating a "clear probability of persecution." In contrast, the statutory section that specifies the burden an alien must meet in order to qualify as a refugee (and thus be eligible for consideration under the asylum provision) does not restrict the harm for which relief may be granted to a threat to "life or freedom." In the case of

the refugee provision, the statute itself uses the phrase "persecution," 8 U.S.C. § 1101(a)(42)(A) (1982), which the Supreme Court has noted is "a seemingly broader concept than threats to 'life or freedom.' " *Stevic*, 104 S.Ct. at 2500 n. 22. In fact, we have ourselves previously made it clear that the statutory term "persecution" includes more than just restrictions on life and liberty; the term encompasses "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive." *Kovac v. INS*, 407 F.2d 102, 107 (9th Cir. 1969); *accord Bolanos-Hernandez*, 767 F.2d at 1283 n. 13. Accordingly, the statutory term "persecution" in the "well-founded fear of persecution" standard encompasses more than the statutory term "threat to life or freedom" and thus more than the non-statutory term "persecution" used in the judicially established "clear probability of persecution" test.

The difference in language between the standards used in asylum and prohibition-against-deportation cases makes another important contrast between the two tests apparent. The term "well-founded fear" refers to a subjective state of mind, while "clear probability" refers to an objective fact. The latter phrase requires an examination of the objective realities, while the former requires an analysis of the applicant's mental state (notwithstanding the fact that the fear must have some objective basis if we are ultimately to find it well-founded). *See Bolanos-Hernandez*, 767 F.2d at 1283.

■ There is a significant practical consequence to the fact that different analyses are required under the two standards. The term "clear probability" requires a showing that there is a greater-than-fifty-percent chance of persecution. In contrast, the term "well-founded fear" requires that

---

**3.** Although independent corroborative evidence of the threat is not necessary, *Bolanos-Hernandez*, 767 F.2d at 1285, the applicant must introduce some evidence that supports the contention that "the group making the threat has the will or ability to carry it out," *id.* We found that Bolanos-Hernandez's unrefuted credible

testimony about a specific, serious threat, supported by documentary evidence that demonstrated that the group that made the threat had in the past carried out violence of the sort threatened, was sufficient to establish a likelihood of persecution.

(1) the alien have a subjective fear, and (2) that this fear have enough of a basis that it can be considered well-founded. While in the latter case there must be some objective basis for the fear, contrary to the requirement of the "clear probability" test the likelihood of persecution need not be greater than fifty percent.

■ We have not previously described in any detail the amount and type of evidence required to establish that a fear is "well-founded." Fortunately, however, the Seventh Circuit has done so. In *Carvajal-Munoz*, the Seventh Circuit said that asylum applicants must present "specific facts" through objective evidence to prove either past persecution or "good reason" to fear future persecution. *Carvajal-Munoz*, 743 F.2d at 574. Documentary evidence of past persecution or a threat of future persecution will usually suffice to form the "objective" component of the evidence requirement. However, as the Seventh Circuit noted, refugees sometimes are in no position to gather documentary evidence establishing specific or individual persecution or a threat of such persecution. *See Carvajal-Munoz*, 743 F.2d at 574; *accord Bolanos-Hernandez*, 767 F.2d at 1285; *McMullen v. INS*, 658 F.2d 1312, 1319 (9th Cir. 1981). Accordingly, if documentary evidence is not available, the applicant's testimony will suffice if it is credible, persuasive, and refers to *"specific* facts that give rise to an inference that the applicant has been or has a good reason to fear that he or she will be singled out for persecution on one of the specified grounds" listed in section 208(a). *See Carvajal-Munoz*, 743 F.2d at 574 (emphasis in original); *McMullen*, 658 F.2d at 1318 (great length and concreteness of alien's testimony held sufficient to establish a likelihood of persecution); *Matter of Sihasale*, 11 I&N Dec. 759, 762 (BIA 1966)

(petitioner's "own testimony may be the best—in fact the only—evidence available to her").[4]

Contrary to the government's argument, the approach we have described, which was first articulated by the Seventh Circuit in *Carvajal-Munoz* and subsequently endorsed by us in *Bolanos-Hernandez*, does not render the well-founded fear standard entirely subjective. Applicants must point to specific, objective facts that support an inference of past persecution or risk of future persecution. That the objective facts are established through the credible and persuasive testimony of the applicant does not make those facts less objective. "Mere assertions of possible fear" are still insufficient. *Shoaee v. INS*, 704 F.2d 1079, 1084 (9th Cir.1983). It is only after objective evidence sufficient to suggest a risk of persecution has been introduced that the alien's subjective fears and desire to avoid the risk-laden situation in his or her native land become relevant.

### B. *The Application of the Legal Standard in These Cases*

■ Despite the fact that we have held that the "clear probability" and "well-founded fear" standards are not identical, our clear articulation of the stricter "clear probability" standard and the voluminous guidance available to assist in construction of the "more generous" "well-founded fear" standard, the Board continues to maintain that the "well-founded fear" standard and the "clear probability of persecution" standard are, in practice, identical. In *Matter of Acosta*, Interim Dec. No. 2986 (BIA March 1, 1985), the Board again did so, although acknowledging that the Sixth, Seventh, and Ninth Circuits have squarely

---

4. This standard accords with the standard used in assessing refugee admissions under former § 203(a)(7) of the Immigration Act, one of the predecessors of § 208(a). *See Carvajal-Munoz*, 743 F.2d at 574. Section 203(a)(7) gave the Attorney General discretion to allow entry of persons fleeing Communist nations or the Middle East because of fear of persecution "on account of race, religion, or political opinion." To obtain relief under § 203(a)(7), aliens had to demonstrate "good reason" to fear persecution by means of "credible testimony or other evidence." *Matter of Ugricic*, 14 I & N Dec. 384, 385–86 (1972).

ruled to the contrary. Slip op. at 23.[5] In this respect the Board appears to feel that it is exempt from the holding of *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), and not constrained by circuit court opinions. In *Acosta* it concluded that notwithstanding the law as declared by the Sixth, Seventh, and Ninth Circuits "the standards for asylum and withholding of deportation are not meaningfully different and, in practical application, converge." Slip op. at 25. Here, the Board applied its own construction of the applicant's burden of proof in an asylum case to the claims of both Cardoza-Fonseca and Arguello-Salguera. It held that they were required to demonstrate a clear probability of persecution in order to be declared eligible for asylum.

In Cardoza-Fonseca's case, the immigration judge explicitly stated that he used only the clear probability standard. The Board held, consistent with its position in *Acosta*, that "good reason" or "realistic likelihood"[6] meant no more and no less than "clear probability." The Board then proceeded to evalute Cardoza-Fonseca's asylum application under the more-likely-than-not (clear probability) standard. It concluded that Cardoza-Fonseca failed to meet her burden of proof. The government's brief on appeal similarly asserts that there is "no difference of substance between a 'well-founded fear of persecution' and a 'clear probability of persecution.'"

In Arguello-Salguera's case the Board cited both the asylum section, section 208(a), and the prohibition against deporta-tion section, section 243(h), but articulated only one standard of proof, the stricter "clear probability" standard. It then considered whether the petitioner had demonstrated that she "would" be persecuted. Without any explanation, it concluded that she did not have "a fear of persecution" and had not demonstrated that "she would be singeled (sic) out for persecution." The government's appellate brief in this case concedes that the Board applied the same strict standard to both of the petitioner's claims and argued once again that "the BIA's determination that the burden of proof in asylum and [prohibition] of deportation cases is identical should be upheld." At oral argument, counsel for the government frankly acknowledged that the Board did not apply the law of our circuit in either of the cases before us and that it continues to refuse to apply that law.

■ It is beyond question that under the law of our circuit, as well as others, the Board erred in applying the strict "clear probability" standard to petitioners' asylum claims. This is not an error we can remedy on appeal. "[A]n agency's order must be upheld, if at all, 'on the same basis articulated in the order by the agency itself.'" *Federal Power Commission v. Texaco, Inc.*, 417 U.S. 380, 397, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)); *accord American Textile Manufacturers Institute v. Donovan*, 452 U.S. 490, 539, 101 S.Ct. 2478, 2505, 69 L.Ed.2d 185 (1981); *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). This rule applies to

---

**5.** Although not necessary to its holding, the Third Circuit has recently adopted the Board's position that the alien must show a clear probability of persecution to be entitled to relief under § 208(a) or § 243(h). *See Sotto v. United States INS*, 748 F.2d 832, 836 (3d Cir.1984). In *Sotto* the Third Circuit reversed the Board's decision denying the alien § 208(a) and § 243(h) relief because the Board had failed to consider relevant evidence. *Id.* at 838. Nevertheless, the court felt that an earlier, pre-*Stevic* decision, in which it had concluded that the

"well-founded fear" and "clear probability" standards were identical, constrained its conclusion regarding the appropriate burden of proof.

**6.** We need not decide whether the phrase "good reason" could be synonymous with "well-founded fear." In either event, it is clear from the standards applied to Cardoza-Fonseca's claim, as well as from its position in *Lam*, in *Acosta*, in its briefs, and at oral argument, that the Board did not apply the "well-founded fear" standard.

decisions by the Board of Immigration Appeals just as it applies to other agency determinations. *See Phinpathya v. INS*, 673 F.2d 1013, 1020 (9th Cir.1982), *rev'd on other grounds*, 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984); *Patel v. INS*, 638 F.2d 1199, 1201 (9th Cir.1980); *Castillo-Felix v. INS*, 601 F.2d 459, 462 n. 6 (9th Cir.1979); *Waziri v. INS*, 392 F.2d 55, 57 (9th Cir.1968).

We do not believe that we should attempt to apply the "well-founded fear" standard to the instant claims before the Board has performed that task itself. Cases in which the Board applies too strict a standard and denies relief on that basis must be returned to the Board for reconsideration and not adjudicated *de novo* by the courts. Accordingly, we reverse and remand the Board's determinations regarding the asylum claims so that the Board may evaluate those claims under the proper legal standard.

### III. ARGUELLO-SALGUERA'S SECTION 243(h) CLAIM

The immigration judge observed Arguello-Salguera over the course of three deportation hearings and explicitly determined both that she was credible and that her evidence was sufficient to establish both a well-founded fear and a clear probability of persecution. Nevertheless, the Board rejected her claims. In doing so, the Board merely restated what Arguello-Salguera's evidence consisted of, and what sorts of facts she had not established. We cannot determine from its opinion whether, despite the immigration judge's express credibility findings, the Board found that Arguello-Salguera's story was not credible, or whether it accepted her testimony as truthful and believable but nevertheless found the evidence legally insufficient to establish a clear probability of persecution.

■ As the government points out, the Board has the power to review the record *de novo* and make its own findings of fact. *See Noverola-Bolaina v. INS*, 395 F.2d 131 (9th Cir.1968). The Board also has the right to disagree with the immigration judge's credibility findings. *See McMullen*, 658 F.2d at 1318. Similarly, the Board may determine that the evidence is legally insufficient, despite an immigration judge's contrary determination.

■ Nevertheless, in order for us properly to review the Board's determination, we must understand the basis for its decision and how it arrived at the findings underlying that decision. *See Conteras-Buenfil v. INS*, 712 F.2d 401, 403 (9th Cir.1983); *Mejia-Carrillo v. INS*, 656 F.2d 520, 522 (9th Cir.1981). If the findings of the immigration judge and the Board conflict, we will consider the judge's findings as well as the Board's. *McMullen*, 658 F.2d at 1318 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), for the proposition that evidence in support of the Board's conclusion may be considered less persuasive if examiner who observed witness drew conclusions different than Board's); *cf. Saballo-Cortez v. INS*, 761 F.2d 1259, 1266 (9th Cir.1985) (we defer to immigration judge's negative credibility findings if supported by the record). However, we cannot tell how to view the credibility issue nor can we properly determine whether the Board's decision is supported by substantial evidence, *see Bolanos-Hernandez*, 767 F.2d at 1282 n. 8; *Saballo-Cortez*, 761 F.2d at 1262, unless we understand the Board's findings and its reasons for denying relief.

Because we cannot determine from the Board's opinion whether its conclusion that Arguello-Salguera failed to satisfy the requirements for relief under section 243(h) was based on its independent, implicit negative credibility findings or reflected some legal determination it made after accepting the immigration judge's credibility findings, we must remand her prohibition against deportation claim for clarification of the Board's opinion.

REVERSED AND REMANDED.