Adela **HERNANDEZ–ORTIZ**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE**, Respondent.

Nos. 82–7654, 84–7217.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1984.

Decided Dec. 2, 1985.

511

Margaret L. Popkin, Los Angeles, Cal., for petitioner.

Fumiko H. Wasserman, Asst. U.S. Atty., Los Angeles, Cal., for respondent.

Before NELSON, BOOCHEVER, and REINHARDT, Circuit Judges.

**512**

REINHARDT, Circuit Judge:

Adela Hernandez-Ortiz petitions for review of the Immigration and Naturalization Service's denial of her motion to reopen her deportation proceedings so that she may apply for asylum and for a determination that the Attorney General is prohibited from deporting her. Hernandez-Ortiz established a *prima facie* case for relief under both 8 U.S.C. § 1158(a) (1982) and 8 U.S.C. § 1253(h) (1982). Whether or not the Board relied in part on its discretionary authority to rule on the merits when considering a motion to reopen, we are compelled to conclude that it abused its discretion. Accordingly, we reverse and remand.

## I. BACKGROUND

Petitioner Adela Hernandez-Ortiz is a native and citizen of El Salvador who entered the United States without inspection in September 1977. In August 1980, an immigration judge determined that Hernandez-Ortiz was deportable and, two years later, the Board of Immigration Appeals ("Board") dismissed her appeal of that decision. In October 1982, Hernandez-Ortiz was instructed to report to the Immigration and Naturalization Service ("INS") on November 2, 1982 for deportation. A petition for review of the deportation order—which automatically stayed that order—was filed with this court on November 1, 1982.[1] When Hernandez-Ortiz reported to the INS office on November 2, 1982, the Service informed her that she would have to remain in custody until it could verify that an appeal to this court had been filed.

On November 5, 1982, the INS erroneously deported Hernandez-Ortiz to El Salvador. Aware of its error, the United States government agreed to arrange and pay for her return to the United States. It

was not until November 22, 1982, however, that Hernandez-Ortiz actually left El Salvador and reentered the United States; although the United States government had made the necessary arrangements, Hernandez-Ortiz was unable to depart from El Salvador any earlier because airport officials claimed she did not have the proper exit documents. She was not allowed to leave until she paid a Salvadoran immigration official approximately $200.[2] According to Hernandez-Ortiz, she has now come to the particular attention of the Salvadoran authorities and they regard her as a traitor.

In addition, a series of other events that took place in El Salvador subsequent to her deportation hearing prompted Hernandez-Ortiz to apply for political asylum after she returned to the United States. In November 1980, after the completion of the proceedings in front of the immigration judge, Hernandez-Ortiz's brother—a teacher—and his wife were murdered in El Salvador by Salvadoran security forces. A few days before Hernandez-Ortiz was erroneously deported to El Salvador in November 1982, Salvadoran soldiers entered her grandparents' grocery store, threatened them with submachine guns, and robbed them of both goods and the store's gross receipts for the day. In June 1983, shortly before Hernandez-Ortiz petitioned to have her deportation proceedings reopened, her brother-in-law's wife was kidnapped late at night by members of the Salvadoran National Guard who beat her and threw salt and sand in her eyes. The Guardsmen returned to Hernandez-Ortiz's brother-in-law's house and threatened to kill both her brother-in-law and his wife.

---

1. We never ruled on the petition. On August 25, 1983, after Hernandez-Ortiz filed her motion to reopen with the Board, we granted a stay of the proceeding in this court pending a ruling from the Board on her motion to reopen. Having reviewed the records of the original deportation hearing, we find substantial evidence to support the determination that Hernandez-Ortiz is an undocumented alien who may be deported, absent a valid claim to one of the many forms of

relief from deportation available to otherwise deportable aliens.

2. As we must for purposes of a motion to reopen, we accept as true the facts as presented in Hernandez-Ortiz's affidavits. *Maroufi v. INS,* 772 F.2d 597, 600 (9th Cir.1985); *Reyes v. INS,* 673 F.2d 1087, 1090 (9th Cir.1982).

In July 1983, Hernandez-Ortiz submitted to the Board a motion for reopening of her deportation proceedings along with her formal request for asylum and a prohibition against deportation, as well as her supporting declaration and documentary evidence. The Board denied her motion to reopen, concluding that Hernandez-Ortiz's fears were merely those "concerning the political upheaval and random violence" in El Salvador and that any threat she faces is not related to her political opinion.

## II. GOVERNING LEGAL STANDARDS

Hernandez-Ortiz ultimately seeks both relief under section 208(a) of the Refugee Act of 1980, 8 U.S.C. § 1158(a) (1982)—which is referred to as "asylum"—and relief under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h) (1982)—which is properly referred to as "prohibition against deportation," *see Bolanos-Hernandez v. INS,* 767 F.2d 1277, 1283 (9th Cir.1984). But she does not, at this time, appeal from a denial of relief under either of these sections. Rather, she appeals from the Board's denial of her motion to reopen her deportation proceedings in order that she may assert such claims for relief.

■ The Supreme Court recently reiterated that the Board's denial of a petition by an alien seeking reopening is reviewed for an abuse of discretion. *See INS v. Rios-Pineda,* —— U.S. ——, 105 S.Ct. 2098, 2101, 85 L.Ed.2d 452 (1985) (citing *INS v. Phinpathya,* 464 U.S. 183, 104 S.Ct. 584, 588 n. 6, 78 L.Ed.2d 401 (1984)); *accord INS v. Jong Ha Wang,* 450 U.S. 139, 143–44 n. 5, 101 S.Ct. 1027, 1030–31 n. 5, 67 L.Ed.2d 123 (1981). If the petitioner fails to establish a *prima facie* case for relief, the Board does not abuse its discretion in denying the motion to reopen. *Maroufi v. INS,* 772 F.2d 597, 600 (9th Cir.1985). Accordingly, we must first determine whether Hernandez-Ortiz established a *prima facie* case for either of these forms of relief based on new, material evidence.

■ A *prima facie* case is established when an alien presents "affidavits *or* other evidentiary material," 8 C.F.R. § 103.5 (1985) (emphasis added), which, if true, would satisfy the requirements for substantive relief. *Reyes v. INS,* 673 F.2d 1087, 1089–90 (9th Cir.1982). However, the requirements for substantive relief under section 208(a) are considerably less stringent than those under 243(h); accordingly, there is a significant difference between the tests we apply in the two cases. *See Cardoza-Fonseca v. INS,* 767 F.2d 1448, 1451 (9th Cir.1985); *Bolanos-Hernandez,* 767 F.2d at 1282. When a petitioner seeks substantive relief under section 243(h) she must demonstrate a clear probability that her life or freedom would be threatened if she returned to her country. *See INS v. Stevic,* 467 U.S. 407, 104 S.Ct. 2489, 2498, 81 L.Ed.2d 321 (1984). As the Supreme Court explained, persecution must be more likely than not. *Id.* However, where the relief sought is asylum, persecution need not be more likely than not. *Stevic,* 104 S.Ct. at 2498 n. 19; *Cardoza-Fonseca,* 767 F.2d at 1454. The petitioner need only demonstrate that she is a refugee, i.e., that she has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See Cardoza-Fonseca,* 767 F.2d at 1451; 8 U.S.C. § 1101(a)(42)(A) (1982).

■ As we have explained, the test for refugee status includes a subjective and an objective component. *Bolanos-Hernandez,* 767 F.2d at 1283 & n. 11. The subjective component is satisfied if the fear is genuine. The objective component is satisfied if persecution is, in fact, a "reasonable possibility." *Stevic,* 104 S.Ct. at 2498; *Carvajal-Munoz v. INS,* 743 F.2d 562, 573–74 (7th Cir.1984). In determining whether persecution is a reasonable possibility, the "conditions in the [alien's] country of origin, its laws, and the experiences of others" are relevant. *Bolanos-Hernandez,* 767 F.2d at 1283 n. 11; United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status* ¶¶ 42, 43 (1979)

(cited hereinafter as *Handbook* ).[3] The alien's "desire to avoid a situation entailing the risk of persecution" may be enough to satisfy the well-founded-fear test and thus establish eligibility for asylum relief. *Bolanos-Hernandez,* 767 F.2d at 1283 n. 11; *Handbook, supra,* at ¶ 45.

■ Because the well-founded-fear standard is more generous than the clear-probability standard, an alien who satisfies the latter, *a fortiori* has satisfied the former. *Bolanos-Hernandez,* 767 F.2d at 1282. Accordingly, we examine Hernandez-Ortiz's claim to determine if she established a *prima facie* case for relief under section 243(h).[4] If so, she has also established a *prima facie* case for relief under section 208(a).

## III. THE PRIMA FACIE CASE

### A. *Likelihood of Persecution*

■ Hernandez-Ortiz's affidavit describes several incidents in which the authority of the Salvadoran government was specifically and violently directed against members of her family. She also claims that Salvadoran officials now regard her as a traitor. Because motions to reopen are decided without a hearing and serve only a limited screening function, *see Reyes,* 673 F.2d at 1089, 1091, for purposes of these motions the Board must accept as true the factual statements contained in the affidavits submitted by a petitioner. *Maroufi,* 772 F.2d at 600; *Reyes,* 673 F.2d at 1090. Yet the Board found that Hernandez-Ortiz had failed to establish a *prima facie* case, dismissing her allegations as "conclusory assertions ... insufficient to justify reopening in the absence of corroborating evidence."

■ In reaching its conclusion the Board misconstrued the law and imposed an improper evidentiary burden on the petitioner. First, to be entitled to reopening in order to assert a section 243(h) claim, an alien need only present an affidavit that is not inherently unbelievable, *cf. Reyes,* 673 F.2d at 1090 (motion to reopen to present suspension-of-deportation claim), and that contains factual allegations that, if true, would establish a clear probability of future persecution. Unless the alleged facts are "inherently unbelievable," corroboration is not required to establish the *prima facie* case necessary for reopening. *See Maroufi,* 772 F.2d at 600; *Reyes,* 673 F.2d at 1090.[5] Here, the Board did not find the facts inherently unbelievable, nor could it properly have done so. Accordingly, corroboration was not required.

---

**3.** The *Handbook* provides us with some assistance in understanding many concepts related to our immigration laws. The *Handbook* contains standards for interpreting the United Nations Protocol Relating to the Status of Refugees, *done* January 31, 1967, 19 U.S.T. 6224, T.I.A.S. No. 6577, 606 U.N.T.S. 268, to which the United States acceded in 1968, and which informed Congress' actions when it passed the Refugee Act in 1980. That Act amended our immigration laws so as to bring United States law into conformity with international law. *See, e.g., Stevic,* 104 S.Ct. at 2499; *Duran v. INS,* 756 F.2d 1338, 1340 n. 2 (9th Cir.1985); S.Rep. No. 256, 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S. Code Cong. & Ad.News 141, 144. On various occasions the Board has accorded significant weight to the *Handbook's* interpretations of the protocol. *See, e.g., Matter of Rodriguez-Palma,* 17 I & N Dec. 465, 468 (1980). A number of courts, as well, have referred to the *Handbook* for guidance. *See, e.g., Ananeh-Firempong v. INS,* 766 F.2d 621, 626–28 (1st Cir.1985); *Bolanos-Hernandez v. INS,* 767 F.2d 1277 (9th Cir.

1984); *Carvajal-Munoz v. INS,* 743 F.2d 562, 574 (7th Cir.1984); *Zavala-Bonilla v. INS,* 730 F.2d 562, 567 (9th Cir.1984); *Stevic v. Sava,* 678 F.2d 401 (2d Cir.1982), *rev'd on other grounds,* 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *McMullen v. INS,* 658 F.2d 1312, 1319 (9th Cir. 1981).

**4.** There is no question that Hernandez-Ortiz presented new, material evidence that was unavailable at the time of her initial deportation proceeding. *See* 8 C.F.R. §§ 3.2, 242.22 (1985); her request for relief is based on events that took place after that proceeding.

**5.** Direct corroborative evidence of a threat to an alien's life or freedom is not necessary even in the full hearing on the merits of a petition for relief under § 208(a) and § 243(h) because "the imposition of such a requirement would result in the deportation of many people whose lives are genuinely in jeopardy." *Bolanos-Hernandez,* 767 F.2d at 1285.

Second, Hernandez-Ortiz's affidavit did not merely consist of "conclusory assertions." She submitted factual descriptions of violent attacks and threats against family members. In light of petitioner's affidavit, it is clear that the Board misconceived the law and placed an improper evidentiary burden on her when it found her allegations to be "conclusory." We have in the past considered substantially less evidence sufficient to warrant reopening in order to petition for asylum. *See, e.g., Samimi v. INS*, 714 F.2d 992 (9th Cir.1983). Moreover, we have previously noted the relevance of violence directed against an alien's family members. *See Argueta v. INS*, 759 F.2d 1395, 1397 (9th Cir.1985). The fact that there have been a number of threats or acts of violence against members of an alien's family is sufficient to support the conclusion that the alien's life or freedom is endangered. We need not decide if any incident described in Hernandez-Ortiz's affidavit would be sufficient in itself, *see Samimi*, 714 F.2d at 995: "[C]ombined they raise a sufficiently serious question concerning [her] fate should [s]he return to [her country] that a more thorough consideration of the claims is indicated." *Id.*

In addition to her affidavit describing specific threats and acts of violence, Hernandez-Ortiz included in her application for asylum exhibits that document abuses committed by her government against its civilian population. Rather than undermining her petition, these exhibits strengthen it. As we recently made clear, the fact that "the individual resides in a country where the lives and freedom of a large number of persons are threatened" does not lessen the significance of evidence of a specific threat to the individual petitioner's life or freedom. *Bolanos-Hernandez*, 767 F.2d at 1285; *cf. Espinoza-Martinez v. INS*, 754 F.2d 1536, 1540 (9th Cir.1985) (general information concerning oppressive conditions and violence in particular country is relevant). Rather, this documentary evidence, although not necessary on a mo-

tion to reopen, *see* 8 C.F.R. § 103.5 (1985) (motion to reopen must be supported by "affidavits *or* other evidentiary material") (emphasis added), presents an additional "reason to take the threat seriously," *Bolanos-Hernandez*, 767 F.2d at 1285; *accord Espinoza-Martinez*, 754 F.2d at 1540; *Zavala-Bonilla v. INS*, 730 F.2d 562, 564 (9th Cir.1984); *McMullen v. INS*, 658 F.2d 1312, 1318 (9th Cir.1981).

The case at bench is factually quite different from two recent cases in which we examined the Board's denials of motions to reopen. In *Sagermark v. INS*, 767 F.2d 645 (9th Cir.1985), we affirmed the Board's denial of a motion to reopen that did not state any new facts not considered in the original proceedings. *See id.* at 648. In contrast, Hernandez-Ortiz's motion to reopen is based on events that took place subsequent to her initial deportation hearing and which thus could not have been presented in the original proceeding. In *Maroufi v. INS*, 772 F.2d 597 (9th Cir. 1985), the petitioner claimed that members of a group he supported were executed by the government in Iran, but did not in any way attempt to explain the basis for the claim. Rather, his application consisted solely of "conclusory and speculative inferences drawn from generalized events." *Id.* at 599. He did not attest to any facts in support of his claim based on his own knowledge or submit any supporting factual statement from any other individual with personal knowledge. Further, the petitioner failed to allege that he or anyone he knew had ever been threatened because of affiliation with the group in question.

In *Maroufi* we denied the petitioner's motion to reopen for the purpose of asserting a section 243(h) claim. Maroufi's connections with the victims of persecution were tenuous at best, and we denied his petition on the ground that we could not draw "a specific inference of personal danger from such a sweeping claim." *Id.* at 599.[6] In addition, we explained that Mar-

---

6. We did not intend to suggest in *Maroufi* that membership in a persecuted group is insuffi-

cient in itself to require a finding of eligibility for asylum or an order prohibiting deportation.

oufi's particular contentions of hampered communications with his family and the Iranian government's refusal to allow his parents to sell non-Iranian goods did not in any way provide a basis for concluding that he was subject to a genuine threat of persecution. Hernandez-Ortiz, in contrast, has described numerous specific incidents in which members of her family—a small, readily identifiable group—have been the victims of threats and acts of violence. Her knowledge derives from her own communications with her family. In addition, based on her own experiences, she has attested that she, personally, has now come to the attention of the Salvadoran government.

Hernandez-Ortiz established the requisite *prima facie* showing of a clear probability that her life or freedom would be threatened if she returned to El Salvador. *A fortiori*, she has also established, for *prima facie* case purposes, that her fear of persecution is well-founded.[7]

### B. *Political Opinion*

The Board also concluded that neither Hernandez-Ortiz nor any of her relatives has ever been harmed "on account of race, religion, nationality, membership in a particular social group, or political opinion." A clear probability that an alien's life or freedom is threatened, without any indication of the basis for the threat, is generally insufficient to constitute "persecution" and thus to preclude the Attorney General from deporting the alien. There must also be some evidence that the threat is related to one of the factors enumerated in section 243(h). Although Hernandez-Ortiz opposes the current regime in El Salvador, the Board concluded that she failed to demonstrate that any threat to her life or freedom was related to her political opinion.

See *Handbook, supra* p. 7, at ¶ 44. Such a suggestion would squarely contradict history. Few could doubt, for example, that any Jew fleeing Nazi Germany in the 1930's or 40's would by virtue of his or her religious status alone have established a clear probability of persecution.

The Board based this conclusion on the fact that Hernandez-Ortiz did not allege that she or any of her relatives was a member of any political groups or "had ever participated in the current conflict in El Salvador."

Section 243(h) could be read as providing that only the alien's race, religion, nationality, membership in a particular social group, or political opinion, not the persecutor's, can be considered in determining whether oppressive conduct constitutes persecution. However, we do not believe the section may properly be given so restrictive or mechanical a construction. "Persecution" occurs only when there is a difference between the persecutor's views or status and that of the victim; it is oppression which is inflicted on groups or individuals because of a difference that the persecutor will not tolerate. *See Sagermark*, 767 F.2d at 649; *Kovac v. INS*, 407 F.2d 102, 107 (9th Cir.1969). For this reason, in determining whether threats or violence constitute political persecution, it is permissible to examine the motivation of the persecutor; we may look to the political views and actions of the entity or individual responsible for the threats or violence, as well as to the victim's, and we may examine the relationship between the two.

In this case it is the forces of the government that are inflicting the threats and violence. When a government exerts its military strength against an individual or a group within its population and there is no reason to believe that the individual or group has engaged in any criminal activity or other conduct that would provide a legitimate basis for governmental action, the most reasonable presumption is that the government's actions are politically motivated. Here, numerous incidents were all

7. In *Maroufi*, because we *affirmed* the BIA's denial of prohibition against deportation relief, we could not, of course, apply an *a fortiori* rule to the asylum reopening claim. In that case, we decided to remand the asylum petition because we could not determine what legal standard the Board had applied in considering that part of the case or even what issue the Board had decided. *Maroufi*, 772 F.2d at 601.

directed at members of the same family. Because the killings, kidnapping, beating, threats, robbery, and harassment were all inflicted by government forces, the inference that they were connected and politically motivated is an appropriate one. *Cf. Samimi,* 714 F.2d at 995 (considering alleged acts of governmental persecution collectively); *see also Bolanos-Hernandez,* 767 F.2d at 1284–85 (allowing reasonable inferences to be drawn so as to avoid impermissibly imposing evidentiary requirements that aliens cannot possibly meet); *Zavala-Bonilla,* 730 F.2d at 565 (same); *McMullen,* 658 F.2d at 1319 (same).

A government does not under ordinary circumstances engage in political persecution of those who share its ideology, only of those whose views or philosophies differ, at least in the government's perception. It is irrelevant whether a victim's political view is neutrality, as in *Bolanos-Hernandez,* or disapproval of the acts or opinions of the government. Moreover, it is irrelevant whether a victim actually possesses any of these opinions as long as the government believes that he does. *See Argueta,* 759 F.2d at 1397 (death threat based on persecutors' *erroneous* belief that alien was a member of a guerrilla organization is sufficient to establish clear probability of persecution based on political opinion); *see also Handbook, supra* p. 7, at ¶¶ 80–83 (government's persecution of persons to whom it attributes certain political opinions is persecution on account of political opinion). In most societies, a failure to take sides or to articulate a political opinion does not ordinarily trigger retribution. However, when through legally cognizable inferences or otherwise, an alien establishes a *prima facie* case that he is likely to be persecuted because of the government's belief about his views or loyalties, his actual political conduct, be it silence or affirmative advocacy, and his actual political views, be they neutrality or partisanship, are irrelevant; whatever the circumstances, the persecu-

tion is properly categorized as being "on account of ... political opinion."

Hernandez-Ortiz has satisfied her burden of establishing, for *prima facie* case purposes, that the threat to her life or freedom constitutes political persecution.[8]

## IV. DISCRETION BEYOND THE PRIMA FACIE CASE

When the Board restricts its decision to whether the alien has established a *prima facie* case it is only this basis for its decision that we review. *See Maroufi,* 772 F.2d at 601 (remanding for clarification of basis for Board's decision); *cf. Cardoza-Fonseca,* 767 F.2d at 1456. However, in some cases it may not be entirely clear whether the Board's denial of an alien's request for reopening is based in part on an exercise of its discretionary authority to rule on the merits, or whether the Board denied reopening solely because it concluded that the alien failed to establish a *prima facie* case. It is unclear in this case whether or not the Board relied in part on its authority to rule on the merits. However, based on the facts before us, the Board could not have denied the motion on either basis without abusing its discretion.

■ In reviewing a case in which an alien ultimately sought suspension of deportation, the Supreme Court recently stated that when the Board considers an alien's motion to reopen, if it "decides that [substantive] relief should be denied as a matter of discretion, [it] need not consider whether the threshold statutory eligiblility requirements are met." *Rios-Pineda,* 105 S.Ct. at 2102. After *Rios-Pineda* we explained that the same rule governs "regardless of the nature of the underlying relief" sought by the alien. *Maroufi,* 772 F.2d at 600; *accord Mattis v. INS,* 774 F.2d 965, 968 (9th Cir.1985); *Vasquez v. INS,* 767 F.2d 598, 601 (9th Cir.1985); *Sangabi v. INS,* 763 F.2d 374, 375 (9th Cir.

---

**8.** Because of the conclusion we reach regarding the political-opinion issue, we need not consider Hernandez-Ortiz's contention that her family constitutes a "social group" for purposes of sec-

tion 243(h) and that any persecution she might suffer would also be on account of her membership in that particular social group.

1985). Thus, the Board may deny a motion to reopen if (a) in its discretion, it would eventually deny the ultimate relief even if it granted the motion to reopen, (b) it adequately articulates the bases for its exercise of its discretion, and (c) the exercise of its discretion is based on "legitimate concerns." *See Mattis*, 774 F.2d at 968.

We recently considered in some detail both the extent of the Board's discretion when an alien seeks reopening to apply for adjustment of status, and the types of factors that present "legitimate concerns" on which the Board may base a denial of that form of relief from deportation. *See Mattis*, 774 F.2d at 968. However, we have not previously considered the extent of the Board's discretionary authority if it chooses to rule on the merits when an alien makes a motion to reopen in order to apply for asylum and a prohibition against deportation.

In a deportation hearing, when an alien asserts an entitlement to relief under section 243(h), the Board, in making its determination on the merits, can consider only whether the alien established a clear probability of persecution. If so, relief is mandatory and, under the terms of the statute, the Attorney General is prohibited from deporting the alien. *See Stevic*, 104 S.Ct. at 2496 n. 15. There are no discretionary factors the Board is allowed to consider and use as a basis for denying relief on the merits. Accordingly, if the Board decides to determine the merits of a section 243(h) claim on a motion to reopen it has two choices. It may determine that the alien is statutorily eligible for relief and issue the order prohibiting deportation. Alternatively, it may determine that the alien is not statutorily eligible and deny reopening.

Because motions to reopen are decided without a hearing, the Board cannot make credibility determinations at this stage of the proceedings. Accordingly, it must accept the factual statements in the alien's affidavits as true. *See supra* p. 514. This rule applies with equal force in all motions to reopen, whether the Board chooses to reach the merits or not.

If the Board chooses to reach the merits when considering a motion to reopen a section 243(h) proceeding, it must engage in precisely the same analysis as when it considers whether the alien has established a *prima facie* case: it must determine whether the alien is statutorily eligible for relief, assuming the truth of the facts in the affidavits. Thus, the Board may deny an alien's motion to reopen to assert a section 243(h) claim, whether or not it reaches the merits, only if the alien has failed to establish a *prima facie* case for relief under that section. As we have discussed, if the factual statements in Hernandez-Ortiz's affidavits are accepted as true, she has established statutory eligibility for relief under section 243(h). Therefore, even if the Board decided to determine the merits of her claim under that section on the basis of her petition to reopen, it could not have simply denied her the relief she sought without affording her a hearing.

The problems raised by a motion to reopen to apply for asylum under section 208(a) are somewhat more complicated. When an alien asserts eligibility for asylum during a deportation hearing, the Board must make two separate determinations in order to rule on the merits of the claim. First, it must make a nondiscretionary determination whether the alien is a refugee, i.e., has a well-founded fear of persecution. *See Stevic*, 104 S.Ct. at 2496 n. 15. If the alien qualifies as a refugee, then the Board has some discretion in determining whether to grant him asylum. *See id.* at 2497 & n. 18. Statutory eligibility itself does not ensure a grant of asylum.

 Accordingly, if the Board exercises its discretionary authority to rule on the merits when an alien makes a motion to reopen in an asylum case, it may consider the same factors it would consider in the deportation hearing, although, as we have noted, it must assume the truth of the alien's testimony. Moreover, the Board's discretion is far from limitless in such cases, and it is our responsibility "to review the Board's exercise of discretion ... [to

ensure that the] denial of the alien's motion to reopen is [not] arbitrary." *Reyes*, 673 F.2d at 1089.

We have not previously delineated the factors, or "legitimate concerns," *see Mattis*, 774 F.2d at 968, that the Board may consider when denying asylum to an alien who has established refugee status. We note, however, that 8 C.F.R. § 208.8(f)(1) (1985) lists a small number of factors that require the denial of relief, *e.g.*, "the alien, having been convicted by final judgment of a particularly serious crime, constitutes a danger to the community of the United States." The regulation also specifies one factor that would justify the discretionary denial of asylum: "there is an outstanding offer of resettlement by a third nation where the applicant will not be subject to persecution and the applicant's resettlement in a third nation is in the public interest." 8 C.F.R. § 208.8(f)(2) (1985). The factors mentioned in section 208.8 of the regulations are substantial factors involving the national interest or the welfare of the community, or they are factors relating to the existence of other means of ensuring the safety and security of the alien. Although we need not, at this time, define precisely the kinds of legitimate concerns that may serve as a basis for the Board's determinations, it would appear that, where the Board has not identified an alternative source of refuge, it can deny asylum only on the basis of genuine compelling factors—factors important enought to warrant returning a bona fide refugee to a country where he may face a threat of imminent danger to his life or liberty.

When the Board denies any motion as a matter of discretion, it must specify clearly the factors it has considered. *See Patel v. INS*, 741 F.2d 1134, 1137 (9th Cir.1984); *De La Luz v. INS*, 713 F.2d 545, 546 (9th Cir.1983). Accordingly, when an alien makes a motion to reopen to apply for any form of discretionary relief and the Board denies the motion after considering the merits, it must clearly articulate the factors it has considered and the basis for its discretionary determination. *See Mattis*, 774 F.2d at 968. Needless to say, this rule applies when the relief ultimately sought is asylum. Moreover, the factors listed by the Board in its explanation must be among those on which the Board is permitted to base the determination at issue.

As we have already discussed, Hernandez-Ortiz has, for purposes of a motion to reopen, established a well-founded fear of persecution. The Board has not specified, nor could it specify under the facts that have been brought to our attention, any factors that would justify an ultimate denial of the application for asylum. Accordingly, we must reverse.

## V. CONCLUSION

The Board of Immigration Appeals abused its discretion when it denied Hernandez-Ortiz's motion to reopen. The Board incorrectly concluded that Hernandez-Ortiz's factual contentions were insufficient to demonstrate, for *prima facie* case purposes, a clear probability that her life or freedom would be threatened were she to be returned to El Salvador. The Board also erred as a matter of law when it concluded that Hernandez-Ortiz did not establish, for *prima facie* case purposes, that the threat to her life or freedom is related to political opinion. Finally, whether or not the Board relied in part on its discretionary authority to rule on the merits, we must reverse. Hernandez-Ortiz established, for purposes of a motion to reopen, statutory eligibility for both forms of relief. Under those circumstances the Board could not properly proceed to the merits and deny relief from deportation. Moreover, the Board has not specified, nor could it on the record before us, any factors that would justify a denial, as a matter of discretion, of asylum relief.

REVERSED AND REMANDED