45 F.3d 435
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Ramsis Halim BOULES, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-70582.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 8, 1994.*
Decided Dec. 23, 1994.
 
 Before: BROWNING, GOODWIN, and FERGUSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ramsis Halim Boules, a Coptic Christian from Egypt, appeals the Board of Immigration Appeals ("BIA") denial of his applications for asylum, withholding of deportation and voluntary departure. Because we find that Boules has failed to allege facts sufficient to establish a "well-founded fear of persecution," we affirm the denial of his application for asylum and withholding of deportation. We remand, however, for reconsideration of voluntary departure.
 
 I.
 
 3
 Boules entered the United States in August, 1983, as a nonimmigrant visitor and did not leave. On December 15, 1986, the Immigration and Naturalization Service ("INS") issued Boules an Order to Show Cause and Notice of Hearing, charging Boules with being deportable for having overstayed his visitor's visa. See Immigration and Nationality Act Sec. 241a(2), 8 U.S.C. Sec. 1251a(2). At a hearing in March of 1987, Boules conceded deportability and renewed his application for asylum, thus simultaneously applying for withholding of deportation. He applied for voluntary departure in the alternative. Boules claimed he is subject to persecution in Egypt because he is a Coptic Christian.
 
 
 4
 At a subsequent hearing in February, 1988, Boules testified to general "persecution" against Christians in Egypt in education, employment and exercise of religious freedom. According to Boules, the persecution begins in elementary school, when Christian children are given the Koran to study, and grows progressively worse in the high schools and universities. Employers also persecute and discriminate against Christians, first by requiring applicants to list their religion on any job application form, and second by not giving them time off on Sundays or Christian holidays, except occasionally Easter. In the army, Christian soldiers are posted to locations far away from their homes. Boules also claims that "very few" Copts have risen to prominence in Egyptian society. Moreover, churches have been burned and bombed. From talking to friends and family in Egypt, Boules gathered that the situation had only grown worse.
 
 
 5
 Boules did not, however, testify to any instances of specific persecution directed at himself. He testified that "persecution" caused him to take seven years in place of the standard four to complete college, but provided no facts to establish the causal connection. Boules also claimed that he had experienced persecution during his time in the army, when, like other Christian soldiers, he was placed "in locations very far away from the homes" and treated "really bad," but, again, provided no specifics. Boules also said that never during his time in Egypt had he been imprisoned, committed crimes, been involved with politics or been the victim of physical abuse or harm. Immigration Judge William J. Martin (the "IJ") was unable to extract from him a definite answer on whether he would be in a worse position than other Christians on his return to Egypt.
 
 
 6
 In addition to evaluating Boules' own testimony, the IJ considered a report filed by the Bureau of Human Rights and Humanitarian Affairs of the Office of Asylum Affairs. The Bureau had no information on Boules himself and stated that Egypt's constitution guarantees Copts "freedom of religious expression and equality before the law." While Copts may face "prejudice and isolated acts of discrimination," the Bureau had no evidence that the government was behind the discrimination. The Bureau also noted that President Mubarak had publicly emphasized the "full equality of Copts."
 
 
 7
 Because the IJ found that any discrimination experienced by Boules did not rise to the level of persecution, he denied petitioner's applications and his request for voluntary departure, and ordered Boules deported to Egypt. The IJ stated that "[l]ife indeed may be more difficult for Christians as a group in Egypt, than for Moslems as a group, however, the respondent has made no credible or objective showing that the authorities or any group are interest in persecuting him due to his religion." Voluntary departure was denied on the ground that Boules had not indicated willingness to leave the U.S.
 
 
 8
 On March 8, 1988, Boules filed a written notice of appeal to the BIA, contending that he had established a well-founded fear of persecution based on the situation of Christians in Egypt.[1] In May, 1992, the BIA upheld the IJ's decision. The BIA found that Boules had shown, at most, that Christians may experience discrimination in Egypt.
 
 II.
 A. Denial of Request for Asylum
 
 9
 Boules claims that he is a refugee qualified for asylum within the U.S. because he has a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. Sec. 1101(a)(42)(A); 8 U.S.C. Sec. 1158a. Asylum will be granted if 1) Boules can establish a "well-founded fear" both objectively and subjectively, and 2) the Attorney General chooses to exercise discretion not to deport him.[2] Cardoza-Fonseca v. INS, 767 F.2d 1448, 1451-1453 (9th Cir.1985), aff'd, INS v. Cardoza-Fonseca, 480 U.S. 421 (1987).
 
 
 10
 Substantial evidence supports the BIA's determination that Boules failed to demonstrate an objective fear of persecution. The incidents and facts alleged by Boules 1) did not rise to the level of persecution, and 2) referred to general conditions in Egypt rather than specific attacks on Boules.
 
 
 11
 Boules was required to provide credible, direct, and specific evidence of facts that provide a realistic basis for his fear of persecution. Garcia-Ramos v. INS, 775 F.2d 1370, 1374 (9th Cir.1985) ("[T]here must be some basis in reality or reasonable possibility that a petitioner would be persecuted."); Rebollo-Jovel v. INS, 794 F.2d 441, 443 (9th Cir.1986) (citing Diaz-Escobar v. INS, 782 F.2d 1488, 1492 (9th Cir.1986)); Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988). Because of the understandable difficulties faced by refugees in obtaining evidence from their home country, documentary evidence is not required. Cardoza-Fonseca, 767 F.2d at 1453.
 
 
 12
 Although the BIA made no adverse findings with respect to Boules' credibility, it found that the facts Boules alleged simply did not add up to persecution. The most Boules showed was that "Christians suffer some discrimination in Egypt." This was not a sufficient basis for a fear of persecution.
 
 
 13
 The Ninth Circuit has defined persecution as "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive." Kovac v. INS, 407 F.2d 102, 107 (9th Cir.1969). While persecution encompasses mental and emotional suffering as well as physical sanctions, it has never included all the practices abhorrent to our own ideals. Agreeing with the Third Circuit, this court recently said that " 'persecution' is an extreme concept that does not include every sort of treatment our society regards as offensive." Fisher v. INS, 37 F.2d 1371, 1382 n. 8 (9th Cir.1994) (quoting Fatin v. INS, 12 F.3d 1233, 1243 (3d Cir.1993). We need not, and should not, construe persecution to encompass all actions and attitudes that do not measure up to our own ideals of justice and fairness. In this case, the discrimination suffered by Boules simply does not add up to persecution.
 
 
 14
 This is particularly true when, as here, Boules complains of incidents that affect Egypt in general, not him in particular. Fears of generalized physical suffering rampant in the alien's home country has never been held to constitute persecution. "Knowledge of random violence does not substantiate a claim of persecution under the immigration laws." Rodriguez-Rivera, 848 F.2d at 1006. Nor do "general conditions of political unrest" amount to political persecution. Echeverria-Hernandez v. INS, 923 F.2d 688, 691 (9th Cir.1991); see also Saballo-Cortez v. INS, 761 F.2d 1259, 1264 (9th Cir.1985) (denial of discounts on food and work permit for more desirable type of employment does not constitute persecution); Raass v. INS, 692 F.2d 596, 596 (9th Cir.1982) (asylum in the U.S. requires more than "generalized economic disadvantage" in home country); Martinez-Romero v. INS, 692 F.2d 595, 595-596 (9th Cir.1982) ("If we were to agree with the petitioner's contention that no person should be returned to El Salvador because of the reported anarchy present there now, it would permit the whole population, if they could enter this country some way, to stay here indefinitely. There must be some special circumstances present before relief can be granted.").
 
 
 15
 Moreover, while Christians are undeniably a protected group, Boules has also failed to show that he would be singled out for persecution from among other Copts. Hartooni v. INS, 21 F.2d 336, 341 (9th Cir.1994) (requiring a "specific inference of personal danger" in addition to evidence of persecution of, and membership in, a protected group (quoting Hernandez-Ortiz v. INS, 777 F.2d 509, 515-516 (9th Cir.1985). Proof of group membership can at times suffice to establish a "well-founded fear of persecution" where a pattern of systematic persecution against the group has been established. 8 C.F.R. Sec. 208.13(b)(2)(i). See generally Kotasz v. INS, 31 F.2d 847, 852-854 (9th Cir.1994) (discussing the role of group membership in establishing a well-founded fear of persecution). Here, however, Boules does not claim that Christians in Egypt are so persecuted as to be presumptively entitled to asylum. Thus, it is not enough for Boules to claim his status as a Coptic Christian in Egypt creates a well-founded fear of persecution at the hands of a government or non-governmental militants who choose to oppress and harm Christians. Rather, Boules must show that he fears being singled out from the general population and Christians in general because he is Christian. The BIA found that Boules had not done this. While he has alleged facts to show that Christians in Egypt face a greater risk of certain types of harm than the population in general, it is purely speculative whether Boules himself would face this harm. See Sivaainkaran v. INS, 972 F.2d 161, 165 (7th Cir.1992) (while Tamils may be in general a disfavored group in Sri Lanka, Tamil asylum applicant was still required to provide objective basis for fear of being singled out for persecution).
 
 II. Denial of Withholding of Deportation
 
 16
 To establish that deportation should be withheld, Boules must meet a stricter standard and show a "clear probability of persecution" or that persecution is "more likely than not." 8 C.F.R. 242.17(c); 8 U.S.C. 1253(h)(1); INS v. Stevic, 467 U.S. 407, 430 (1984). Because this standard is more difficult to meet than that for asylum, Boules' failure to establish a "well-founded" fear of persecution conclusively establishes his failure to meet the "clear probability of persecution" standard required for withholding of deportation.
 
 III. Voluntary Departure
 
 17
 Both the IJ and the BIA denied voluntary deportation because Boules had failed to meet his burden of proof by offering no indication of his willingness to depart from the U.S. Because Boules applied for voluntary departure, however, he automatically indicated his willingness to depart. Although Boules may have failed to demonstrate his statutory eligibility for voluntary departure in some other respect, neither the Board nor the IJ stated any other reason for the denial. We cannot affirm the BIA's decision on a basis other than that actually relied upon by the Board. See Cardoza-Fonseca v. INS, 767 F.2d at 1454-55. We therefore reverse the denial of voluntary departure and remand for further consideration by the Board.
 
 
 18
 Petition DENIED, but REMANDED for reconsideration of voluntary departure.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Three years after filing the notice of appeal, in February, 1991, Boules filed a Motion to Reopen Deportation Proceedings with the Board of Immigration Appeals so that he could apply for an Adjustment of Status pursuant to INA 201(b) and 245. On May 5, 1990, Boules had married a United States citizen, Lilian Fakhry Awad, who had filed a petition to obtain immediate relative classification for Boules. The BIA rejected this motion, citing Matter of Arthur, Interim Decision 3173 (BIA 1992) (refusing to consider motion for reconsideration because evaluation of motion would of necessity involve an evaluation of the visa application, which would constitute an unwarranted intrusion into the district director's authority over the adjudication of visa petitions). Boules has not appealed the denial of the motion to reopen. In August, 1992, after Boules filed his Petition for Review before this court, Boules' wife's petition was approved. Boules filed another Motion to Reopen with the Board of Immigration in November, 1992. This Motion is currently awaiting the Board's decision
 
 
 [2]
 Persecution need not be by the government, but can occur at the hands of a non-governmental group, where the government cannot or will not control the group. McMullen v. INS, 658 F.2d 1312, 1315 n. 2 (9th Cir.1981)