962 F.2d 13
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Michael Babatunde AJAYI, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE. Respondent.
 No. 90-70242.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 11, 1992.*
Decided May 5, 1992.
 
 Before FLETCHER, D.W. NELSON and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Michael Ajayi, a Nigerian national, seeks review of the Board of Immigration Appeals' (BIA) dismissal of his appeal from the Immigration Judge's (IJ) denial of his application for asylum and withholding of deportation. The IJ found that Ajayi failed to demonstrate a "well-founded fear of persecution" and therefore did not meet the statutory definition of refugee under 8 U.S.C. § 1101(a)(42)(A). The IJ also held that even if Ajayi had demonstrated that he was a refugee and therefore eligible for asylum, she would decline to exercise her discretion to grant him asylum under 8 U.S.C. § 1158(a).
 
 
 3
 We reverse and remand to the BIA for further proceedings.
 
 FACTS
 The Asylum Application
 
 4
 Ajayi applied for asylum in June 1989. In support of his application, he stated that in 1960 his father and uncles were founding members of the Nigerian National Democratic Party (NNPN). The NNPN ruled Nigeria from 1960 to 1966, when it was overthrown by a military coup. His father and uncles later founded the National Party of Nigeria (NPN), an off-shoot of NNPN, which ruled the country from 1979 until 1983, when again a military coup ended civilian rule.
 
 
 5
 As a result of association with these two parties, Ajayi claimed that members of his family have been "arrested, beaten, [and] detained" often. He stated that he remembered as a child being moved from the family home to various hideouts to avoid persecution, and that as a consequence of the 1966 military crackdown, his family's house was destroyed by fire, as were the facilities and equipment of his father's construction company and his mother's sawmill company. He also stated that in 1966 leaders of the party were assassinated, while his family members were detained for a period of time, then released.
 
 
 6
 After the 1983 coup, Ajayi's family members were among 4,000 people detained. Ajayi's father was released from detention only when he contracted tuberculosis; he apparently remains under house arrest. Ajayi stated that his uncle, the chairman of the NNP, left Nigeria at that time because he feared for his life, and was seeking asylum in Britain. His uncle's wife sought permission from the Nigerian government to return briefly to attend the funeral of her father. According to Ajayi, although the government granted her permission, she was detained at the airport and released only after she "lied about her husband" and was able to leave Nigeria again only after she obtained false travel documents.
 
 
 7
 In December of 1981, Ajayi briefly left the United States and returned to Nigeria. During that visit, Ajayi attended political rallies with his father and uncles. Returning from one such rally with his brother-in-law, Ajayi was shot at by armed men in a jeep just outside the family home. Ajayi was not hurt, but his brother-in-law was shot in the leg. According to Ajayi, it was later discovered that the men were opposition party loyalists who were actually after Ajayi, and that Ajayi's brother-in-law, in exchange for a business contract with members of the opposition party, had agreed to set-up Ajayi. At his father's urging, he again left Nigeria because it was too dangerous for him to remain, and returned to the United States on a nonimmigrant student visa.
 
 
 8
 Ajayi's depiction of the conditions in Nigeria and the treatment of his family are largely corroborated by his sister's affidavit in support of his application. She is a permanent resident of the United States. She relates the same events, as well as the circumstances surrounding a personal attack on her involving physical and sexual abuse. The record also contains an affidavit from a friend concerning conditions and events in Nigeria, articles decrying human rights abuses in Nigeria (particularly detentions without charges) and Urgent Action letters from Amnesty International. None of these deal explicitly with a member of the Ajayi family.
 
 Ajayi's Pre-Asylum Application History
 
 9
 Ajayi first entered the United States in 1976. On December 23, 1980, he married a United States citizen. On his return from Nigeria in early 1981, his wife filed an immediate relative visa petition on his behalf. However, the marriage was determined to be a fraudulent one, entered into for the purposes of adjusting immigration status. Ajayi was convicted on a four count indictment based on the fraudulent application and sentenced to two-and-a-half years imprisonment, three years probation, and fined $3,000. Ajayi, at that time a resident of Kansas, failed to report for the commencement of his sentence, and served his time only after federal marshals apprehended him in California.
 
 Asylum Hearing
 
 10
 At the asylum hearing, the IJ concluded that Ajayi was not entirely candid in answering questions regarding his marriage and conviction. For example, he stated that he and his wife had not lied to INS officials regarding their marriage. He represented to the IJ that they had spent six nights together; an affidavit from his wife states they spent only two nights together. He answered "I don't know" or "I don't remember" to a number of questions, and offered some questionable explanations about the reason for his conviction and subsequent failure to report to prison.[1] He represented to the IJ that when applying for a visa to leave Nigeria in 1981, he informed the American Consul in Lagos that he was married to a U.S. citizen. He claims that the consul advised him to apply for a nonimmigrant student visa, and apply for the immediate relative status visa when he got to the United States. The IJ found this last bit of testimony "flatly incredible."
 
 
 11
 Nonetheless, as to the matters relating to fear of persecution, the IJ accorded Ajayi's testimony "full credibility" and found that he had established a subjective fear of persecution. She found that he had not, however, established an objective fear and therefore did not establish a well-founded fear of persecution. She also held that even if Ajayi had demonstrated himself to be eligible, she did not think it a proper exercise of discretion to grant him asylum because his criminal record and history of untruthfulness weighed so heavily against him. In exercising her discretion, the IJ considered Ajayi's five-year relationship with his current fiancee, his steady employment as a CPA, the fact that he contributed financially and otherwise to the upbringing of his fiancee's two children, and the fact that several community members wrote letters testifying to his good moral character.
 
 
 12
 In dismissing the appeal, the BIA approved the IJ's decision except it did not accord Ajayi's testimony the credibility that the IJ gave it. Ajayi now seeks review of the BIA's dismissal of his appeal.
 
 DISCUSSION
 A. Standard of Review
 
 13
 The BIA's determination that Ajayi has not established a "well-founded fear of persecution" must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4). As the Supreme Court has recently made clear, under this standard the BIA's conclusion that Ajayi is not eligible for asylum "can be reversed only if the evidence presented by [Ajayi] was such that a reasonable fact-finder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992).
 
 B. Analysis
 1. Well-Founded Fear of Persecution
 
 14
 Before we may find a "well-founded fear of persecution," we must ascertain whether "(1) the alien has a subjective fear, and (2) this fear has enough of a basis that it can be considered well-founded." Vilorio-Lopez, 852 F.2d at 1140.
 
 
 15
 Although courts have not defined "well-founded fear," it is clear that in order to demonstrate such fear and qualify for a discretionary grant of asylum, an alien does not have to establish that it is more likely than not that she will be persecuted upon returning to her country of origin. This latter showing constitutes the higher threshold which an alien must meet in order to merit a mandatory grant of asylum. INS v. Cardoza-Fonseca, 480 U.S. 421 (1987). Because the IJ found that Ajayi had established a subjective fear of persecution, we turn to the question of whether this fear was well-founded from an objective viewpoint.
 
 
 16
 The BIA reversed the IJ's finding that Ajayi was credible in describing occasions on which he and his family had been persecuted for political reasons in Nigeria. It reasoned that Ajayi's sham marriage and his false testimony concerning his conversation with the American consulate established him as incredible. We cannot fault the BIA's determination that Ajayi is not a particularly credible witness. Nevertheless, the ultimate question is whether Ajayi had a well-founded fear of persecution, not whether he is a credible person. We cannot agree with the BIA's determination that the events in Nigeria did not take place simply because Ajayi himself is not credible.
 
 
 17
 Here, in concluding that Ajayi was credible in describing those events, the IJ pointed to the fact that his testimony was strongly corroborated. It is apparent that this corroboration satisfied the IJ that the dangerous incidents described by Ajayi had in fact occurred.[2] The affidavits of Ajayi's sister and friend supported his recounting of events.
 
 
 18
 Ajayi's sister testified to the same details regarding the persecution of the Ajayi family: the frequent hideouts, the burning of the family home and businesses, the detentions without charges in 1983 and the departure of various family members from Nigeria. Significantly, her testimony corroborates Ajayi's description of the 1981 shooting as well as his characterization of the political motives behind the event. In addition, she testified to the persecution she herself suffered, providing more evidence of persecution aimed at the Ajayi family. His friend's affidavit, while less detailed, is additional evidence.
 
 
 19
 Given this evidence, we search in vain for support for the BIA's conclusion that the events did not occur as related by Ajayi's sister and friend and confirmed by Ajayi. Either they too were not credible, or the facts are established as the IJ believed them to be. Therefore, we are unable to uphold the BIA's apparent determination that the events did not occur. In our view, no reasonable factfinder could do so. Elias-Zacharias, 112 S.Ct. at 815.
 
 
 20
 Furthermore, we conclude that in light of the events described by Ajayi and corroborated by others, no reasonable fact-finder could conclude that Ajayi did not possess a well-founded fear that if he returned to Nigeria he would be subjected to further persecution. To prove a well-founded fear, "[t]he alien must present "specific facts" through objective evidence to prove either past persecution or "good reason" to fear future persecution.' " Vilorio-Lopez, 852 F.2d at 1140 (citing Cardoza-Fonseca v. INS, 767 F.2d 1448, 1453 (9th Cir.1985), aff'd, 480 U.S. 421 (1987)). Simple allegations of general violence in a country will not suffice. Id. The alien must instead present evidence demonstrating a threat to his own life or freedom.
 
 
 21
 Ajayi has submitted articles documenting human rights abuses in Nigeria, particularly the arbitrary detention of political dissenters. He has also supplemented this general documentation: not only has he advanced specific allegations and reasons for his fear, his testimony is, as discussed above, largely corroborated by his sister's affidavit. His story is one of specific, concentrated attacks on his family and himself, not of random, unexplained threats or violence that we have found insufficient to meet the well-founded fear standard in the past. See, e.g., Diaz-Escobar, 782 F.2d at 1493 (Guatemalan native who received anonymous note telling him to leave the country or face the consequences, but admitted that he had never been harmed by the government or the guerillas, did not establish a well-founded fear of persecution). Ajayi has explained how he and his family have often been forced into hiding in Nigeria, with family members beaten and detained upon falling into the hands of government authorities. He has related the destruction of family property. He has described, finally, an attack on his own life that forced him to flee the country. In sum, he has presented evidence of past persecution in the face of which no reasonable fact-finder could fail to find a well-founded fear of persecution were he to return to Nigeria. Elias-Zacarias, 112 S.Ct. at 815.
 
 
 22
 The statute requires that the fear must be of persecution on account of political opinion, actual or imputed. 8 U.S.C. § 101(a)(42). The opinion must be the victim's (not the persecutor's) and the victim must provide some evidence, direct or circumstantial, that he has reason to fear that the persecutors will persecute him because of political opinion, not for other reasons. Elias Zacarias, 112 S.Ct. at 816. To reverse the "BIA's determination, [Ajayi] must show that the evidence he presented was so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution." Id. at 817. He has met his burden. His father and uncles were prominent ruling members of the government ejected from power by a military coup. They were subjected to violence and internment and on many occasions went into hiding. Ajayi himself was a target, was shot at by opposition party members and narrowly missed death the last time he visited Nigeria. The Government's argument that Ajayi's family's political beliefs cannot be attributed to Ajayi is wrong. The critical facts are that the Nigerian Government believes that the entire family, including the petitioner here, represents a threat to the Government because of the family's political opinions and that the Government has acted because of its belief to target family members for persecution and reprisal. See Hernandez-Ortiz v. INS, 777 F.2d 509, 517 (9th Cir.1985).
 
 2. Discretionary Grant of Asylum
 
 23
 Of course, our conclusion that Ajayi has a well-founded fear of persecution does not end the matter. The BIA, in addition to rejecting Ajayi's asylum claim, exercised its discretion under 8 U.S.C. § 1158(a) to find Ajayi deportable because of his criminal record. Although unnecessary to its decision, the BIA nonetheless undertook the latter exercise hypothesizing that Ajayi was entitled to asylum. It then exercised its discretion, weighing the various other factors in Ajayi's record that counselled for or against deportation. We see a danger in such an exercise. A decision-maker confronted with the fact of well-founded fear of persecution, as opposed to the hypothetical that it may exist, might well react quite differently in performing an equitable balancing. We readily concede that some records would be so one-sided (for example, where the crime were heinous, or the criminal record extensive) that the reviewer could be confident that the result would be the same. However, that is not this case. Ajayi is not an admirable character but his crimes are not overly-serious: they do not involve violence, and the state court judge who sentenced him recommended against deportation. Furthermore, Ajayi appears currently to have a stable life, a job and family responsibilities. We conclude that the BIA should be given the opportunity in this case to exercise its discretion in light of the fact of asylum eligibility. Although we express no view on how the BIA might exercise its discretion on remand, the fact "that a given result could be reached after the exercise of discretion does not dispense with the exercise of discretion." Castro-O'Ryan v. INS, 847 F.2d 1307, 1314 (9th Cir.1988).
 
 CONCLUSION
 
 24
 We REVERSE the BIA's determination that Ajayi did not establish a well-founded fear of persecution. We REMAND the case to the BIA so that it may determine whether Ajayi is entitled to a discretionary grant of asylum.
 
 
 
 *
 The panel unanimously find this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Ajayi also has two state convictions, one for passing a bad check, and one for filing a false insurance claim for medical bills incurred in Nigeria during his 1980/81 visit. Ajayi was fined $125 for writing the bad check. The second conviction carried a two-to-ten year term of incarceration that was later modified to two years probation. In sentencing him, the Kansas state court explicitly recommended against deportation
 
 
 [2]
 We may consider the IJ's findings in this context. See McMullen v. INS, 658 F.2d 1312, 1317-18 (9th Cir.1981)