78 F.3d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Oriel German SOUSA-SAAVEDRA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70609.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 16, 1996.*
Decided Feb. 26, 1996.
 
 Before: REINHARDT, THOMPSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Oriel Sousa-Saavedra, a native and citizen of Panama, petitions this court for review of a final order of the Board of Immigration Appeals ("BIA" or "Board") which dismissed his appeal from an order of an immigration judge which denied his request for asylum and withholding of deportation.[1]
 
 
 3
 * We first review the standards for asylum and withholding of deportation.
 
 
 4
 * Section 208(a) of the Immigration and Nationality Act (the "Act")[2] gives the Attorney General discretion to grant political asylum to any alien whom the Attorney General determines to be a "refugee" within the meaning of section 101(a)(42)(A) of the Act.[3] In order to obtain asylum, an applicant must establish both that he is a refugee and that he is entitled to asylum as a matter of discretion. Ubau-Marenco v. INS, 67 F.3d 750, 754 (9th Cir.1995) (citations omitted).
 
 
 5
 In order to qualify as a refugee (and to thus be eligible for asylum), an applicant "must show either past persecution or a 'well-founded fear of persecution' on account of [his or her] race, religion, nationality, membership in a particular social group, or political opinion." Singh v. Ilchert, 69 F.3d 375, 378 (9th Cir.1995).[4] If an applicant is able to prove past persecution, then a well-founded fear of future persecution is presumed, and the burden shifts to the INS to show, by a preponderance of the evidence, that "since the time the persecution occurred conditions in the applicant's country ... have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if ... [he] were to return." Id. (quoting 8 C.F.R. § 208.13(b)(1)(i)).
 
 
 6
 If the applicant is unable to show past persecution, he may still obtain refugee status by demonstrating a well-founded fear of future persecution. Id. This test includes both subjective and objective components. Id. (citing Shirazi-Parsa v. INS, 14 F.3d 1424, 1427 (9th Cir.1994)). The subjective element is satisfied by a showing that the alien's fear is genuine. Hernandez-Ortiz v. INS, 777 F.2d 509, 513 (9th Cir.1985). An applicant's credible testimony that he fears persecution is sufficient to meet this requirement. Singh, 69 F.3d at 378 (citation omitted). The objective element requires a showing "by credible, direct, and specific evidence in the record ... that persecution is a reasonable possibility." Id. (citations, quotations omitted).
 
 
 7
 If the applicant is able to establish refugee status, he must still prove that he is entitled to asylum as a matter of discretion. 8 U.S.C. § 1158(a).[5] In deciding whether to exercise its discretion, the BIA may deny asylum "if there is little likelihood of present persecution." Kazlauskas v. INS, 46 F.3d 902, 905-06 (9th Cir.1995) (quotations, citation omitted).
 
 B
 
 8
 The standards for withholding of deportation are more demanding than those for asylum. Section 243(h)(1) of the Act states that "[t]he Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h)(1). Under this statute, "an alien's deportation must be withheld if the alien shows 'a clear probability of persecution' in the alien's home country [on account of the five forbidden factors]." Singh, 69 F.3d at 380 (quotations, citations omitted) (emphasis in original). In order to satisfy this standard, the alien must provide objective evidence showing "that it is 'more likely than not' that [she] will be persecuted if deported to her home country." Id. at 381 (quoting INS v. Stevic, 467 U.S. 407, 424, 104 S.Ct. 2489, 2497, 81 L.Ed.2d 321 (1984)).
 
 
 9
 Because the standard for withholding of deportation is more stringent than the "well-founded fear of persecution" standard for asylum eligibility, "failure to satisfy the lesser standard of proof required to establish eligibility for asylum necessarily results in a failure to demonstrate eligibility for withholding of deportation as well." Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995) (citation omitted).
 
 II
 
 10
 The BIA found that the immigration judge correctly concluded that Sousa-Saavedra had failed to establish his status as a refugee. This court must uphold that decision "if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' " Ubau-Marenco, 67 F.3d at 754 (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992) (quoting 8 U.S.C. § 1105a(a)(4))). In order to obtain a reversal, Sousa-Saavedra must present evidence "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Elias-Zacarias, 502 U.S. at 483-84, 112 S.Ct. at 817.[6]
 
 
 11
 Applying this standard, we conclude that the Board's findings that Sousa-Saavedra has not established his status as a refugee is supported by substantial evidence, and that Sousa-Saavedra has provided insufficient evidence to compel the conclusion that the Board erred.
 
 
 12
 The BIA initially found that Sousa-Saavedra had failed to prove past persecution. In doing so, the Board noted that Sousa-Saavedra's evidence merely proved that his "encounters with political forces in that country consist[ed] entirely of being near general violence when it occurred and that none of it was direct[ed] specifically at him."
 
 
 13
 The BIA's conclusion is supported by substantial evidence. The evidence shows that although Sousa-Saavedra admittedly participated in as many as two or three demonstrations per week during one seven-month period, he was arrested and detained only once (in March 1989). In addition, he was arrested only after striking a policeman who was attacking his mother and sister, thus suggesting that the arrest had more to do with his defense of his family than with his political views. Following the incident, Sousa-Saavedra fled to Chiriqui, Panama; however, in May 1989 he returned home to Chorrera, because "[his] family was there" and because he "wanted to see the result of the election." There is no evidence that his family was persecuted while he was away, nor that he was persecuted after he returned. In addition, after subsequently travelling briefly to Costa Rica, he was able to return unmolested to Panama for a three-week period in July 1989, during which he managed to obtain an exit visa to Mexico. Finally, none of Sousa-Saavedra's family members, who apparently still live in Chorrera, have been persecuted by government forces since he left Panama.[7]
 
 
 14
 In sum, the BIA's decision regarding past persecution "is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,' " Ubau-Marenco, 67 F.3d at 754 (quotation, citation omitted), and it must therefore be upheld.
 
 
 15
 The BIA also held that even if Sousa-Saavedra had established past persecution, the INS had met its burden of showing, by a preponderance of the evidence, that "since the time the persecution occurred conditions in the applicant's country ... have changed to such an extent that [he] no longer has a well-founded fear of being persecuted if ... [he] were to return." See 8 C.F.R. § 208.13(b)(1)(i)). The Board's finding on this point is also supported by substantial evidence.
 
 
 16
 As the Board noted, Manuel Noriega has been removed from power in Panama, and a democratically-elected government has taken his place.[8] The BIA may properly rely on this factor in determining whether Sousa-Saavedra's fear of persecution, even if subjectively genuine, is objectively "well-founded." See, e.g., Kazlauskas, 46 F.3d 902, 906 n. 3 (9th Cir.1995) ("Fundamental social or political changes in the applicant's homeland are highly relevant to the likelihood of future persecution.") (citations omitted); Acewicz v. U.S. INS, 984 F.2d 1056, 1060-61 (9th Cir.1993) (BIA did not abuse its discretion in taking administrative notice of changed conditions in post-Communist Poland, and in considering effect of those changes on whether applicant's fear of persecution was well-founded); Man v. INS, 69 F.3d 835 (7th Cir.1995) (BIA did not deprive asylum applicants of due process in taking administrative notice of removal of General Noriega).
 
 
 17
 In addition, the BIA found that Sousa-Saavedra's arguments that forces which remain loyal to Noriega would seek him out and harm him are "wholly speculative and unsupported by the record." It noted that even if Noriega's forces were still active, Sousa-Saavedra's status in the Christian Democratic Party was "relatively low-level," and that he would accordingly be an unlikely target for retribution. In addition, the BIA noted that the one incident in which Sousa-Saavedra had been arrested was "relatively minor," and that "the record does not reflect that [Sousa-Saavedra] or his family in Panama have been the subject of any recent inquiries from the government" of Panama.
 
 
 18
 These findings are supported by reasonable, substantial, and probative evidence on the record considered as a whole, and Sousa-Saavedra has failed to present evidence sufficient to compel the conclusion that "no reasonable factfinder could fail to find the requisite fear of persecution." Elias-Zacarias, 502 U.S. at 483-84, 112 S.Ct. at 817. We therefore must affirm the BIA's dismissal of Sousa-Saavedra's appeal.[9]
 
 III
 
 19
 The BIA's conclusion that Sousa-Saavedra has failed to prove either past persecution or a well-founded fear of future persecution is supported by substantial evidence. We must therefore affirm the BIA's decision that Sousa-Saavedra has failed to establish his status as a refugee, and that he is ineligible for asylum. In addition, because Sousa-Saavedra has failed to prove that he holds a well-founded fear of future persecution, he has necessarily failed to prove a clear probability of persecution as required to obtain a withholding of deportation. See, e.g., Ghaly, 58 F.3d at 1429.
 
 
 20
 For these reasons, we deny the petition for review.
 
 
 21
 PETITION DENIED.
 
 
 22
 REINHARDT, Circuit Judge, concurs in the result.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 We have jurisdiction to consider the petition under 8 U.S.C. § 1105a(a)
 
 
 [2]
 Section 208(a), codified at 8 U.S.C. § 1158(a), provides that "[t]he Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title."
 
 
 [3]
 This latter provision, codified at 8 U.S.C. § 1101(a)(42)(A), defines "refugee" as an alien who is "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his or her home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...."
 
 
 [4]
 Persecution is defined as "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive." Ubau-Marenco, 67 F.3d at 754 (quotations, citations omitted)
 
 
 [5]
 This court thus reviews the BIA's ultimate denial of asylum for abuse of discretion. Ubau-Marenco, 67 F.3d at 754 (citation omitted)
 
 
 [6]
 See also Elias-Zacarias, 502 U.S. at 481 n. 1, 112 S.Ct. at 815 n. 1 ("To reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it....") (emphasis in original). In light of this language, our review of the Board's factual findings is "extremely deferential." Ghaly, 58 F.3d at 1431
 
 
 [7]
 For this reason, Sousa-Saavedra's citation to such cases as Ramirez-Rivas v. INS, 899 F.2d 864, 870 (9th Cir.1990) (petitioner's identification with family members who had been killed or disappeared placed her at high risk of persecution), cert. granted and judgment vacated, 502 U.S. 1025 (1992), and Hernandez-Ortiz v. INS, 777 F.2d 509, 516 (9th Cir.1985) (petitioner's evidence indicating that her family had been subjected to threats and acts of violence by Salvadoran security forces showed a clear probability of persecution), is inapposite
 
 
 [8]
 While not specifically mentioned by the BIA, we note that it has now been more than six years since Noriega was removed from power (in January 1990)
 
 
 [9]
 We note that Sousa-Saavedra's appellate brief cites certain newspaper articles in support of his contention that "[t]he former Noriega guardsmen are linked to various efforts to destabilize the current government and terrorize the Panamanian people." (Emphasis added). However, even though Sousa-Saavedra's brief was filed in January 1995, the most recent such article is dated April 7, 1991