92 F.3d 1195
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Maria A. VADO-MARENCO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70029.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 10, 1996.*
Decided Aug. 1, 1996.
 
 Before: GOODWIN, PREGERSON, and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Maria A. Vado-Marenco, a Nicaraguan national, petitions for review of the decision of the Board of Immigration Appeals (BIA) denying her application for political asylum and withholding of deportation. Because the BIA's finding that petitioner did not establish a well-founded fear of future persecution is not supported by substantial evidence in the record, we grant the petition for review.
 
 
 3
 * We review the BIA's decision[1] for substantial evidence. See INS v. Elias Zacarias, 504 U.S. 478 (1992). To obtain reversal, petitioner "must demonstrate that any reasonable factfinder would have to conclude that ... [petitioner] has a well-founded fear of persecution." Fisher v. INS, No. 91-70676, slip op. 3995, 4004 (9th Cir. April 2, 1996) (en banc) (citations and quotations omitted)
 
 II
 
 4
 An applicant is eligible for political asylum upon a showing of past persecution or a well-founded fear of future persecution on account of one of the enumerated grounds in the Immigration and Nationality Act. Singh v. Ilchert, 69 F.3d 375, 378 (9th Cir.1995) (citing 8 U.S.C. § 1101(a)(42)(A)). Although we agree with the BIA that petitioner has not established past persecution, we believe that she has established a well-founded fear of future persecution based on political opinion.
 
 
 5
 To establish a well-founded fear of persecution, petitioner's "fear of persecution must be both subjectively genuine and objectively reasonable." Fisher, slip op. at 4004. The subjective prong may be satisfied by petitioner's credible testimony that she fears persecution. Singh, 69 F.3d at 378. Here, the BIA found petitioner credible. Thus, the only question in this case is whether petitioner's fear was objectively reasonable. See Gonzalez, slip op. at 5314 (holding that the BIA's determination that a petitioner is telling the truth is an implicit finding that the petitioner's fear is genuine).
 
 
 6
 An applicant's subjective fear of persecution is objectively reasonable where there is "a showing by credible, direct, and specific evidence in the record, of facts supporting a reasonable fear of persecution" on account of one of the enumerated grounds. Singh, 69 F.3d at 378 (citing Ghaly v. INS, 58 F.3d 1425, 1428 (9th Cir.1995)). A one-in-ten chance that petitioner will be persecuted upon his return to Nicaragua satisfies the well-founded fear test. Blanco-Comarribas v. INS, 830 F.2d 1039, 1042 (9th Cir.1987) (citing INS v. Cardoza-Fonseca, 480 U.S. 421, 431-432 (1987)).
 
 
 7
 We find that any reasonable person in petitioner's situation would have a well-founded fear of future persecution if deported to Nicaragua. Petitioner testified that when she was fourteen years old, she witnessed the Sandinistas drag her father from their home and beat him in the street. Petitioner and her siblings were also beaten at that time. Petitioner's father was a member of the Liberal Party, which supported the Somoza government, and had been appointed a judge. Because of his participation in the Somoza regime, the Sandinistas imprisoned and tortured petitioner's father twice. One of these detentions lasted 5 months. After the Sandinistas release petitioner's father, they continued to visit petitioner's home on a regular basis to obtain information on individuals he knew through his political activities. During these visits, the Sandinistas threatened petitioner's father to force him to support the Sandinistas.
 
 
 8
 Petitioner was also beaten by the police for participating in a demonstration in opposition to the Sandinista government in 1987. About 70 demonstrators were killed by the police in stopping the demonstration. In addition to beating her, the police threatened to harm petitioner's father if she continued to participate in activities opposing the government.
 
 
 9
 There is no question that, based on petitioner's beating for participating in the demonstration and threat by the police that harm would befall on her father, as well as the persecution and threats directed at her father, petitioner's fear of future persecution was reasonable. See Gonzalez, slip op. at 5315 (finding that violence actually committed against members of petitioner's family, combined with threats to petitioner, made petitioner's fear of persecution well-founded); Hernandez-Ortiz v. INS, 777 F.2d 509, 515 (9th Cir.1985) (stating that "[t]he fact that there have been a number of threats or acts of violence against members of an alien's family is sufficient to support the conclusion that the alien's life or freedom is endangered").
 
 
 10
 The fact that petitioner stayed in Nicaragua for almost two years after she was beaten before fleeing does not mean that her fear was not reasonable. As we recently explained:
 
 
 11
 [T]he BIA cannot proceed as though there were a rule that if the departure was a considerable time after the first threat, then the fear was not genuine and well founded. Practical, individualized consideration is required. One whose family had lived in a place for generations might not flee at the first sign of danger.
 
 
 12
 Gonzalez v. INS, No. 94-70881, slip op. 5303, 5315 (9th Cir. May 3, 1996).
 
 
 13
 In this case, petitioner credibly testified that she believed that if she left Nicaragua her father would be punished. When she received her visa to travel to El Salvador to visit her brother she had been threatened that if she did not return to Nicaragua her father would be harmed. It was precisely because she had seen firsthand that the Sandinistas could carry out their threats that she returned to Nicaragua. Petitioner finally fled, at the insistence of her father, who feared for her safety. After petitioner fled, and when it was clear that she was not returning, her father was beaten severely, leaving him with "big whole to his right eye." In these circumstances, we are compelled to find that petitioner has established a well-founded fear of future persecution.
 
 
 14
 The government, however, maintains that, because the Sandinistas lost the presidency in 1990, petitioner no longer has a well-founded fear of future persecution. But the record before the BIA does not support the BIA's finding that, as a result of the election of Violeta Chamorro as president, petitioner's fear of future persecution no longer is well-founded. The Department of State's Country Reports on Human Rights Practices for 1990 for Nicaragua documents many instances where individuals have been harassed, tortured, and killed by Sandinistas after the Sandinistas were ousted from the presidency. Further, the advisory opinion from the United States Department of State's Bureau of Human Rights and Humanitarian Affairs confirms that the Sandinistas still retain considerable power in the military, police, bureaucracy, judiciary and unions.
 
 
 15
 Thus, we find petitioner is eligible for political asylum.
 
 III
 
 16
 We, however, find that petitioner is not eligible for withholding of deportation. The standard of proof for withholding of deportation is more stringent than the well-founded fear standard for political asylum. Cardoza-Fonseca, 480 U.S. at 427-432. To receive withholding of deportation, the petitioner must establish that there is a clear probability of persecution--that it is "more likely than not" that she will be persecuted--if she were deported to Nicaragua. INS v. Stevic, 467 U.S. 407, 424 (1984). We do not think that petitioner has made such showing.
 
 IV
 
 17
 As set forth above, we find petitioner has established a well founded fear of future persecution and is therefore eligible for political asylum. The petition for review is GRANTED.
 
 
 18
 REMANDED.
 
 
 19
 KOZINSKI, Circuit Judge, dissenting.
 
 
 20
 After detailing the abuses petitioner suffered at the hands of the Sandinistas when they were in power, the majority concludes, "[a]lthough we agree with the BIA that petitioner has not established past persecution, we believe that she has established a well-founded fear of future persecution based on political opinion." Memorandum at 2. These two determinations are entirely at odds with one another. The record is devoid of specific evidence that petitioner would, if returned to Nicaragua, suffer as badly as she did in the past when we held she was not persecuted; in fact, her chances of being persecuted have diminished, and dramatically so.
 
 
 21
 As I stated in Espinoza-Rivera v. INS, No. 95-70033: "The simple fact is that Nicaragua is not the same place as when petitioner departed [ ]. There has been a meaningful change in government--the Sandinistas were ousted from power and Violeta Chamorro was elected president. it may be true that the Sandinistas maintain a degree of control, but whatever risk petitioner suffers from having opposed the Sandinista government is shared by the 59% of the electorate that voted against it six years ago. See Mark A. Uhlig, Turnover in Nicaragua, N.Y. Times, Feb 27, 1990, at A1 (reporting that, with 82% of the ballots counted, the Sandinistas received only 40.8% of the vote in 1990 presidential elections). I cannot join my colleagues in concluding that someone is entitled to asylum in the United States because she is known to have supported the current government in her native country. Far less can I say that the BIA could not rationally reach the opposite conclusion."
 
 
 22
 I respectfully dissent.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The BIA conducted an independent review of the record. Although the BIA reversed the immigration judge's finding that petitioner was not credible, the BIA still found petitioner ineligible for political asylum and withholding of deportation