60 F.3d 832
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Aja Zanna ALI-BUKAR, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70675.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1995.
Decided July 10, 1995.
 
 Petition to Review a Decision of the Immigration and Naturalization Service, I&NS No. Afl-wmj-pzo.
 INS
 VACATED.
 MEMORANDUM*
 Before: BROWNING, BOOCHEVER, and T.G. NELSON, Circuit Judges.
 
 
 1
 * Aja Zanna Ali-Bukar, a native and citizen of Nigeria, petitions for review of the decision of the Board of Immigration Appeals ("the BIA" or "the Board") affirming the decision of the immigration judge ("IJ") denying his application for withholding of deportation and asylum pursuant to 8 U.S.C. Secs. 1253(h) and 1158(a). The BIA based its denial entirely on its finding of adverse credibility. Because this finding is not based on substantial evidence, we grant the petition, vacate the order and remand to the BIA for consideration of Ali-Bukar's claims of fear of persecution for the purposes of establishing eligibility for asylum or withholding of deportation.
 
 II
 
 2
 "We accord substantial deference to credibility findings, but these findings must be supported by 'specific, cogent reasons."' Nasseri v. Moschorak, 34 F.3d 723, 726 (9th Cir. 1994) (quoting Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir. 1987)). "The reasons offered must be 'substantial and must bear a legitimate nexus to the finding."' Id. (quoting Aquilera-Cota v. INS, 914 F.2d 1375, 1381 (9th Cir. 1990)). "We are also bound to consider whether or not the reasons given are 'valid grounds' for determining that a witness is not credible." Id. (quoting Vilorio-Lopez v. INS, 852 F.2d 1137, 1142 (9th Cir. 1988)).
 
 
 3
 The BIA's adverse credibility findings rest on four grounds: 1) Ali-Bukar's limited knowledge of his alleged religion; 2) his peaceful worship with other Muslims in the United States; 3) his use of alcohol and possession of drugs, indulgences proscribed by the Muslim religion; and 4) his "implausible" explanations concerning his drinking, procurement of cocaine and failure to fulfill his sentencing requirements.
 
 
 4
 Ali-Bukar's evidence in support of his petition included a declaration by Professor Paul Lubeck of the University of California at Santa Cruz, and the oral (telephonic) testimony of Professor Alan Watts of the University of California at Berkeley. The IJ and the BIA found Professor Watts' response to questions significantly different from Ali-Bukar's. Professor Watts' remarks are more sophisticated than Ali-Bukar's, and by comparison, Ali-Bukar's knowledge appears limited. But it hardly needs pointing out that many people who consider themselves religious are at a loss to explain the theology to which they subscribe, and describe their practice with considerably less eloquence than do religious scholars.
 
 
 5
 The BIA's other grounds for finding that Ali-Bukar is not a Maitatsine are also questionable. The BIA agreed with the IJ that "it was significant" that Ali-Bukar was able to worship with other Muslims in the United States. Neither the BIA nor the IJ offer "specific, cogent reasons"--or any reasons at all--to explain the "significance" of this evidence. Reviewing the record leads us to infer that the BIA has decided that "real" Maitatsine have so much animosity toward orthodox Muslims they could not possibly worship together. Even allowing for this inference, it seems odd for the BIA to penalize someone for getting on peaceably with his coreligionists. There would appear to be little reason for Ali-Bukar to approach other Muslims with animosity in a country far removed from the conditions engendering tribal and Islamic sectarian strife. Given the improbability of finding a Maitatsine mosque or community in the United States, the only setting in which Ali-Bukar could observe his religion would be a more traditional Muslim mosque.
 
 
 6
 As for indulgence in alcohol and association with drugs, behaviors which Ali-Bukar readily admits are proscribed by the Muslim religion, this would seem to be a poor litmus test for spiritual sincerity, even assuming sincerity were the key to determining refugee status in such a case.
 
 
 7
 Whether Ali-Bukar is a learned or devout Maitatsine, or whether he has lapsed since coming to this country, as evidenced by his tolerance of other Muslims and his involvement with intoxicants, is beside the point. The BIA's task is not to determine the sincerity of Ali-Bukar's religious beliefs, but to determine whether he is at risk of persecution because he is perceived to belong to a group oppressed by the government (or a group able to carry out its threats). See, e.g., Aguilera-Cota, 914 F.2d at 1380 ("one must continue to look at the person from the perspective of the persecutor. If the persecutor thinks the person guilty of a political opinion, then the person is at risk") (citations and quotations omitted), and Hernandez-Ortiz v. INS, 777 F.2d 509, 517 (9th Cir. 1985) ("it is irrelevant whether a victim actually possesses ... these opinions as long as the government believes he does").
 
 
 8
 Imputation of belief is the relevant measure for claims of persecution based on religion as well as those based on political opinion. See Fisher v. INS, 37 F.3d 1371, 1383 (9th Cir. 1994). Accordingly, the BIA must consider whether it is likely that the Nigerian government will associate Ali-Bukar with the Maitatsine sect on account of his own or his parents' involvement with the group.
 
 
 9
 The BIA's conclusion that Ali-Bukar is not really a practising Maitatsine is based on faulty logic and is in any case irrelevant to his persecution claim. Its speculation as to the truthfulness of his explanations for the DWI and cocaine conviction do not bear a legitimate nexus to the finding of adverse credibility. Moreover, the BIA did not consider any of the factors that support the credibility of Ali-Bukar's claim, including the expert testimony or the documents he submitted. "The agency abuses its discretion if it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief." Yepes-Prado v. INS, 10 F.3d 1363, 1366 (9th Cir. 1993).
 
 
 10
 Because the BIA found Ali-Bukar not credible, it did not consider whether the record contained evidence establishing his eligibility for withholding of deportation or for asylum. In the absence of substantial evidence supporting a finding of adverse credibility, it is required to do so. In Ali-Bukar's case, the IJ, but not the BIA, addressed his persecution claims on the merits. The IJ observed that Ali-Bukar's receipt of two government-issued passports and permission to participate in the USAID program "are not consistent with the claim of persecution." He also found it "significant that the respondent was able to attend [primary and secondary] schools in Nigeria," even though he alleged he was denied entrance to the university. Finally, he noted that Ali-Bukar waited until 1994 to pursue asylum, and "one would certainly have thought that if he was truly concerned about returning to his country ... he would have been far more active in seeking assistance [earlier]."
 
 
 11
 This court has held that the mere possession of a valid national passport from one's country of origin is no bar to refugee status. Damaize-Job v. INS, 787 F.2d 1332, 1336 (9th Cir. 1986). The IJ did not make clear why he believed the government's allowing petitioner to attend secondary school should weigh more heavily than its refusal to allow him to attend college, or why its allowing him to leave the country to participate in USAID is inconsistent with its persecution of the Maitatsine at home. At the very least, the IJ should have weighed these against the evidence provided by Ali-Bukar: 1) his testimony about his parents' deaths and his own imprisonment for tutoring Maitatsine children; 2) the news and agency documentation about persecution of the Maitatsine; and 3) the testimony of his experts, both of whom stated that someone associated with the Maitatsine movement would face serious danger in Nigeria. In making its determination, the Board must weigh this evidence. It should consider whether the deaths of Ali-Bukar's parents might support his claim for asylum, as well as for withholding of deportation. Hernandez-Ortiz, 777 F.2d at 515; Ramirez Rivas v. INS, 899 F.2d 864, 870 (9th Cir. 1990), vacated on other grounds, 502 U.S. 1025, 112 S. Ct. 858 (1992) (past persecution of family members supported the asylum claim of a daughter who was never persecuted herself). We remind the BIA that it must consider the two forms of relief--asylum and withholding of deportation--separately. See Ghebllawi v. INS, 28 F.3d 83, 86 (9th Cir. 1994).
 
 
 12
 Because there is insufficient evidence to support the BIA's finding of adverse credibility, we grant the petition, vacate the BIA's order and remand for consideration on the proper grounds. We request that the hearing be held promptly, as petitioner has already been in detention for over a year pending resolution of his case.
 
 
 13
 VACATED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3